# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AEL FINANCIAL, LLC, an Illinois )
limited liability company )
  )
       Plaintiff, )
  )
       v. )
  )
CITY AUTO PARTS OF DURHAM, INC. )
D/B/A CITY AUTO SALVAGE CITY, a )
North Carolina corporation, )
JOSEPH R. GUARGLIA, SR. AND )
JOSEPH R. GUARGLIA, JR. )
  )
       Defendants. )
_____/

FILED: JUNE 18, 2008

Case No. ___08CV3490___

JUDGE DOW JR.

MAGISTRATE JUDGE MASON

Judge: _____

PH

**COMPLAINT**

       NOW COMES the Plaintiff, AEL FINANCIAL, LLC, an Illinois limited liability company ("AEL"), by and through its attorneys, Brian Ira Tanenbaum and John A. Benson, Jr., of The Law Offices of Brian Ira Tanenbaum, Ltd., brings this Complaint against CITY AUTO PARTS OF DURHAM, INC. d/b/a CITY AUTO SALVAGE CITY  ("City Auto"), JOSEPH R. GUARGLIA, SR., an individual and JOSEPH R. GUARGLIA, JR., an individual (collectively, Joseph R. Guarglia, Sr. and Joseph R. Guarglia, Jr. are sometimes referred to as the "Guarantors") (City Auto and the Guarantors are collectively, the "Defendants") and in support of this Complaint, AEL states as follows:

## I.       JURISDICTION AND VENUE

       1.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states and that the matter in controversy exceeds, exclusive of interest, costs and attorneys' fees, the sum or value of Seventy Five Thousand Dollars ($75,000.00).

2.      This Court has personal jurisdiction over Defendants pursuant to Illinois' long-arm statute, Ill. Rev. Stat. Ch. 110, para. 2-209 ("Section 209") in that the Defendants, made or performed a contract or promise substantially connected with Illinois and thereby transacted business in Illinois by invoking the benefits and protections of Illinois law in the contractual relationship, as the Equipment Lease (hereinafter defined) and the Guaranty (hereinafter defined) executed by the Defendants is governed and construed by Illinois law.

3.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(a).

## II.      THE PARTIES

4.      Plaintiff, AEL Financial, LLC, ("AEL") is an Illinois limited liability company with its principal place of business located at 600 North Buffalo Grove Road, Buffalo Grove, Illinois 60089. AEL is engaged primarily in the business of leasing certain industrial and commercial equipment to various businesses.

5.      All members of AEL are citizens of the state of Illinois and are therefore diverse in citizenship from each Defendant.

6.      Upon information and belief, City Auto is a North Carolina corporation and is therefore doing business within the state of North Carolina with its principal place of business at 1301 South Miami Blvd., Durham, North Carolina 27703.

7.      Upon information and belief, Joseph R. Guarglia Sr. is President of City Auto and his residence and state of citizenship is North Carolina.

8.      Upon information and belief, Joseph R. Guarglia Jr. is Vice President of City Auto and his residence and state of citizenship is North Carolina.

2

### III.    THE EQUIPMENT LEASE & GUARANTY

9.      On or about June 28, 2006, AEL, ("Lessor"), entered into a lease agreement (the "Equipment Lease") with City Auto, ("Lessee"), pursuant to which Lessee leased certain equipment ("Equipment") more fully described in the Equipment Lease.  A true and correct copy of the Equipment Lease is attached hereto as Exhibit A and is fully incorporated by reference herein.

10.     Pursuant to the terms and conditions of the Equipment Lease, Lessee was unconditionally obligated, among other things, to make monthly lease payments in an amount equal to Three Thousand Two Hundred Eight Dollars and 87/100 ($3,208.87), plus applicable sales taxes, to AEL for the sixty (60) month period immediately following the commencement of Lessee's obligation to make lease payments under the Equipment Lease.

11.     Since approximately October, 2007, Lessee has failed to make its required monthly lease payments due AEL under the Equipment Lease, which was on October 12, 2006, the date Lessee accepted delivery of the Equipment.

12.     That demand for complete satisfaction of its obligations under the Equipment Lease has been made by AEL upon lessee, City Auto, pursuant to a certain letter dated April 22, 2008. A true and correct copy of the letter is attached hereto as Exhibit B and is fully incorporated by reference herein.

13.     Contemporaneously with the execution by AEL and Lessee of the Equipment Lease and, in connection therewith, Guarantors executed a certain "Guaranty".  See Exhibit A. Pursuant to the Guaranty, the Guarantors guaranteed Lessee's performance of its obligations for the full terms of the Equipment Lease.  The Guaranty is a guaranty of payment and not of collection.

3

14.     AEL has performed all of its duties and obligations under the Equipment Lease and Guaranty required of it to be performed.

## IV.     CAUSES OF ACTION

### Count I -- Breach of Contract

15.     AEL hereby incorporates each and every allegation set forth herein in Paragraphs 1 through 14 as if more fully set forth herein.

16.     AEL entered into the Equipment Lease with City Auto on or about June 28, 2006.

17.     The Equipment Lease between AEL and City Auto is a valid and enforceable contract.

18.     City Auto materially breached the Equipment Lease without legal justification or excuse by failing to make the required monthly lease payments to AEL since approximately October 2007.

19.     AEL has performed all of its obligations under the Equipment Lease.

20.     AEL has suffered damages by the loss of use of monies AEL paid for the Equipment.

21.     That pursuant to the Equipment Lease, AEL is entitled to and has accelerated all rental sums due for the remainder of the term of the Equipment Lease, and AEL is entitled to additional late charges and attorneys' fees in connection with the enforcement of the Equipment Lease and this litigation.

22.     As of May 29, 2008, the accelerated balance due and owing AEL under the Equipment Lease is Ninety Three Thousand One Hundred Forty Eight Dollars and 83/100 ($93,148.83), plus interest and exclusive of legal fees and court costs.

### REQUEST FOR RELIEF

**WHEREFORE,** AEL FINANCIAL, LLC, an Illinois limited liability company, demands a money judgment against CITY AUTO PARTS OF DURHAM, INC. d/b/a CITY AUTO SALVAGE CITY, a North Carolina corporation, as follows:

1.      To recover all losses suffered by AEL, including actual, compensatory and consequential damages and lost profits in the amount to exceed the sum of Ninety Three Thousand One Hundred Forty Eight Dollars and 83/100 ($93,148.83);

2.      Additional damages, as provided by law;

3.      Interest, attorneys' fees, costs and disbursements, as provided under the Equipment Lease; and;

4.      Such other and further relief as this Court may deem just and proper.

### Count II – Breach of Guaranty
### (Against Joseph R. Guarglia, Sr. & Joseph R. Guarglia, Jr. ("Guarantors"))

23.      AEL repeats and reiterates each and every allegation contained in Paragraphs 1 through 22, inclusive, and adopts the same as though fully set forth herein.

24.      AEL would not have entered into the Equipment Lease without the Guaranty of the Guarantors with respect to Lessee's obligations under the Equipment Lease.

25.      As President and Vice President of Lessee, the Guarantors benefited from the Equipment Lease and the ability of Lessee to use the Equipment.

26.      Pursuant to the Guaranty, the Guarantors are liable for the full satisfaction of Lessee's obligations under the Equipment Lease.

27.     Lessee has failed to make any monthly payment as required under the Equipment Lease since approximately October 2007, and, as a result, as of May 29, 2008, AEL is owed the accelerated sum of Ninety Three Thousand One Hundred Forty Eight Dollars and 83/100 ($93,148.83) by both the Lessee and the Guarantors.

28.     That demand for complete satisfaction of its obligations under the Equipment Lease has been made by AEL upon Guarantors pursuant to a certain letter dated April 22, 2008. A true and correct copy of the letter is attached hereto as Exhibit B and is fully incorporated by reference herein.

**WHEREFORE,** AEL FINANCIAL, LLC, an Illinois limited liability company, demands a money judgment against JOSEPH R. GUARGLIA, SR., an individual, and JOSEPH R. GUARGLIA, JR., a citizen of the state of North Carolina, as follows:

1.  To recover all losses suffered by AEL, including actual, compensatory and consequential damages and lost profits in the amount to exceed the sum of Ninety Three Thousand One Hundred Forty Eight Dollars and 83/100 ($93,148.83);

2.  Additional damages, as provided by law;

3.  Interest, attorneys' fees, costs and disbursements, as provided under the Equipment Lease and Guaranty; and;

4.  Such other and further relief as this Court may deem just and proper.

Dated: June 18, 2008                          Respectfully submitted,

                                              AEL FINANCIAL, LLC, an Illinois limited
                                              liability company


                                              By: /s/ John A. Benson, Jr._____
                                                    One of its Attorneys



Brian Ira Tanenbaum, Esq. (IL Bar No. 6181447)
John A. Benson, Jr., Esq. (IL Bar No. 6289042)
Attorneys for Plaintiff
The Law Offices of Brian Ira Tanenbaum, Ltd.
2970 Maria Avenue Suite 207
Northbrook, Illinois 60062
Telephone: 847-562-1636
Facsimile: 847-562-1637

08CV3490
JUDGE DOW JR.
MAGISTRATE JUDGE MASON

**EXHIBIT A**   PH

 Capital 4 Financial Services Rental Agreement, a program of AEL Financial, LLC

| Customer | Full Legal Name | | Phone Number |
|---|---|---|---|
| | City Auto Parts of Durham, Inc. d/b/a City Auto Salvage City | | 919-246-1023 |
| | Billing Address | | Purchase Order No. |
| | 1301 South Miami Boulevard, Durham, NC 27703 | | |
| | Equipment Location (if not same as above) | | Company Contact |
| | | | Joe Guarglia |

| Equipment Information | 32ea. NBX Phone 3102 Business & Warranty (Requires 3C10), 1ea. NBX Card T1/PRI (Digital Line Card), 1ea. NBX Chassis V5000 (Adds 4 Slots), 1ea. NBX Processor/Chassis V3000, 1ea. Switch Baseline 2226-PWR Plus, 2ea. Router Variable/Ethernet Chassis 5012, 18ea. NBX License-Phone, Group 2, 1ea. NBX Attendant Console 3105 + Warranty (Requires 3C) |
|---|---|

| Payment Information | Number of Rental Payments | Rental Payment (PLUS) Applicable Sales Tax (EQUALS) Total Rental Payment | | Term of Rental in Months |
|---|---|---|---|---|
| | 60 | $2,998.94 · $209.93 = $3,208.87 | | Payment Frequency: ✓ Monthly ☐ Quarterly ☐ Other_____ |
| | | $        ·  $        =  $ | | Security Deposit (PLUS) / First Period Payment (PLUS) / Other (EQUALS) / Total Payment Enclosed |
| | | | | $0.00      $3,208.87      ·  $3,208.87 |
| | | | | Due Pre  $100.00  ·  $3,208.87 |

**TERMS AND CONDITIONS**

1. Rental Agreement. You (the "Customer") agree to rent from us (the "Owner") the Equipment listed above and on any schedule attached to this Rental Agreement. You authorize us to adjust the Rental Payments by up to 15% if the cost of the Equipment or taxes differs from the supplier's estimate. This Rental Agreement starts on the day the Equipment is delivered to you and the Equipment will be deemed irrevocably accepted by you upon our verbal confirmation of delivery and acceptance of the Equipment. The Initial Payment is due on or before the date the Equipment is delivered to you. The Rental Payments will begin on the first day of the month following the date the Equipment is delivered to you and shall continue thereafter to be paid on the same day of each subsequent month or other calendar period and for the four period specified on the Rental Agreement. Charges from the date of delivery of the Equipment to the date the Rental Payments begin shall be computed by converting the Rental Payment to a daily rate based on a 30 day month. Your Rental obligations are absolute, unconditional, and are not subject to cancellation, reduction, setoff or counterclaim. You agree to pay a documentation fee of $100.00, and if the Equipment is located in more than one location, an additional $10.00 documentation fee for each additional location. Security deposits are non-interest-bearing and may be applied to cure your default. If you are not in default we will return the security deposit to you when this Rental Agreement is terminated. When a Rental Payment is not made when due, you agree to pay us a late charge of 5% for each Payment or $10.00, whichever is greater. We may charge you a fee of $25.00 for any check that is returned. YOU ACKNOWLEDGE THAT NO ONE IS AUTHORIZED TO WAIVE OR CHANGE ANY TERM, PROVISION OR CONDITION OF THE RENTAL AGREEMENT.

2. Title. We have title to the Equipment. If this Rental Agreement is deemed to be a security agreement, you grant us security interest in the Equipment and the proceeds thereof. You authorize us to sign and file financing statements on your behalf.

3. Equipment Use, Maintenance and Warranties. We are renting the Equipment to you "AS-IS AND WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. We transfer to you any manufacturer warranties provided to us. You are required at your cost to keep the Equipment in good working condition and to pay for all supplies and repairs. If the Rental Payments include the cost of maintenance and/or service provided by a third party, you agree that we are not responsible to provide the maintenance or service and you will make all claims related to maintenance and service to the third party. You agree that any claims related to maintenance or service will not impact your obligation to pay all Rental Payments when due.

4. Assignment. You agree not to transfer, sell, sublease, assign, pledge or encumber either the Equipment or any rights under this Rental Agreement without prior written consent. You agree that we may sell, assign or transfer this Rental Agreement and the new owner will have the same rights and benefits we now have and will not have to perform any of our obligations and the rights of the new owner will not be subject to any claims, defenses or setoffs that you may have against us or any supplier.

5. Risk of Loss and Insurance. You are responsible for all risks of loss or damage to the Equipment and if any loss occurs you are required to satisfy all of your Rental Agreement obligations. You will keep the Equipment insured against all risks of loss or damage for an amount equal to its replacement cost. You will list us as the sole loss payee of the insurance and give us written proof of insurance. If you do not provide such insurance, you agree that we have the right, but not the obligation to obtain such insurance, and add an insurance fee to the amount due from you on which we make a profit. We are not responsible for any losses or injuries caused by the Equipment and you will reimburse us and indemnify us against any such claims. This indemnity will continue after the termination of this Rental Agreement. You will obtain and maintain comprehensive public liability insurance naming us as an additional insured with coverages and amounts acceptable to us.

6. Taxes. You agree to pay when due, either directly or as reimbursements to us, all taxes (i.e. sales, use and personal property) and charges in connection with ownership and use of the Equipment. We may charge you as a processing fee for administering property tax filings. You will indemnify us on an after-tax basis against the loss of any tax benefits anticipated at the Commencement Date arising out of your acts or omissions.

7. End of Rental Agreement. You will give us at least 90 days but no more than 150 days written notice (to our address below) before the expiration of the initial rental term (or any renewal term) of your intention to return the Equipment. You will return the Equipment to us at your cost. If you fail to give us such notice, or having given us such notice fail to return the Equipment to us, this Rental Agreement will automatically renew at the same Rental Payment amount for consecutive 3-month periods with Rental Payments paid to the selling vendor.

8. Default and Remedies. You are in default on this Rental Agreement if: a) you fail to pay a Rental Payment or any other amount when due, or b) you breach any other obligation under this Rental Agreement or any other Rental Agreement with us. If you are in default we may: a) declare the entire balance of unpaid Rental Payments for the full Rental Agreement term immediately due and payable to us; b) sue you for and receive the total amount due on the Rental Agreement plus the Equipment's anticipated cost of Rental Agreement market value (the "Residual") with future Rental Payments and the Residual discounted to the date of default at the lesser of (i) a per annum rate equivalent to that of U.S. Treasury constant maturity obligation (as reported by the U.S. Treasury Department) that would have a repayment term equal to the remaining Rental Agreement term, all as reasonably determined by us, or (ii) 3%, plus reasonable collection and legal costs; c) charge you interest on all monies due at a rate of 18% per year of the highest rate permitted by law from the date of default; d) require that you immediately return the Equipment to us or we may peaceably repossess it. Any return or repossession will not be considered a termination or cancellation of this Rental Agreement. If the Equipment is returned or repossessed we will sell or re-rent the Equipment at terms we determine, at one or more public or private sales, with or without notice to you, and apply the net proceeds (after deducting any related expenses) to your obligations. You remain liable for any deficiency with any excess being retained by us.

9. Miscellaneous. You agree this Rental Agreement is a "Finance Lease" as defined in Article 2A of the Uniform Commercial Code ("UCC"). You acknowledge we have given you the name of the Equipment supplier, agree that you may have rights under this contract with the supplier and may contact the supplier for a description of these rights. This Rental Agreement was made in Illinois (IL); is to be performed in IL and shall be governed and construed in accordance with the laws of IL. You consent to the non-exclusive personal jurisdiction in any state of federal court in IL and waive a trial by jury. You agree to waive any and all rights and remedies granted to you under Sections 2A-508 through 2A-522 of the UCC. You agree that the Equipment will only be used for business purposes and not for personal, family or household use. We may inspect the Equipment during the Rental Agreement term. You agree that a facsimile copy of this Rental Agreement with facsimile signatures may be treated as an original and will be admissible as evidence of the Rental Agreement.

| Customer Signature | | |
|---|---|---|
| You agree that this is a non-cancellable rental agreement. | | |
| The Equipment is: ☐ New ☐ Used | | |
| Signature | | Date |
| ✓ *Joseph R. Guarglia* | | June 28, 2006 |
| Title | | |
| President | | |
| Print Name | | |
| Joseph R. Guarglia, Sr. | | |
| Full Legal Name | | |
| Joseph R. Guarglia, Sr. | | |

| Owner | | |
|---|---|---|
| AEL Financial, LLC | | |
| 600 North Buffalo Grove Road, Buffalo Grove, IL 60089 | | |
| Phone: 847-465-9700    Fax: 847-279-0759 | | |
| Rental Agreement Commencement Date | | Rental Agreement Number |
| 11-1-06 | | 32584 |
| Accepted By: | | |

**Guaranty**

I unconditionally guaranty prompt payment of all the Customer's obligations. The Owner is not required to proceed against the Customer of the Equipment or enforce other remedies before proceeding against me. I waive notice of acceptance and all other notices or demands of any kind to which I may be entitled. I consent to any extensions or modifications granted to the Customer and the release and/or compromise of obligations of the Customer or any other guarantors without releasing me from my obligations. This is a continuing guaranty and will remain in effect in the event of my death and may be enforced by or for the benefit of any assignee or successor of the Owner. This guaranty is governed by and constituted in accordance with the Laws of the State of Illinois and I consent to non-exclusive personal jurisdiction in any state or federal court in Illinois and waive trial by jury.

| Signature | | Date |
|---|---|---|
| ✓ *Joseph R. Guarglia* | | ✓ 10-12-06 |
| Print Name | | |
| Joseph R. Guarglia, Sr. | Joseph R. Guarglia, Jr. | |

| Acceptance | | |
|---|---|---|
| The Equipment has been received, put in use, is in good working order and is satisfactory and acceptable | | |
| Signature | | Date |
| ✓ *Joseph R. Guarglia Sr* | | ✓ 10-12-06 |
| Print Name | | Title |
| Joseph R. Guarglia, Sr. | | President |

3. LATE CHARGES/DOCUMENTATION FEES: If a Rental Payment is not made when due, YOU will pay US a late charge of 5% of the payment or $10.00, whichever is greater, but only to the extent permitted by law. You agree to pay US a fee of $59.95, plus 1/10th of one percent (1%) of the original Equipment cost in excess of $59,000, to reimburse OUR expenses for preparing financing statements, other documentation costs and all ongoing administration costs during the term of the Rental Agreement.

4. DELIVERY AND ACCEPTANCE: YOU are responsible, at YOUR own cost, to arrange for the delivery and installation of the Equipment (unless such costs are included in the cost of the Equipment to US). If requested, YOU will sign a separate Equipment delivery and acceptance certificate. WE may at OUR discretion confirm by telephone that YOU have accepted the Equipment and this telephone verification of YOUR acceptance of the Equipment shall have the same effect as a signed delivery and acceptance certificate.

5. USE, MAINTENANCE, REPAIR, SUPPLIES AND WARRANTIES: YOU have selected the Equipment and the supplier from whom WE agree to purchase the Equipment at YOUR request. WE are not the manufacturer of the Equipment and WE are renting the Equipment to YOU "AS-IS". WE MAKE NO WARRANTIES CONCERNING THE EQUIPMENT, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. WE transfer to YOU for the term of this Rental Agreement all warranties, if any, made by the manufacturer.

YOU ALSO ACKNOWLEDGE THAT NO ONE IS AUTHORIZED TO WAIVE OR CHANGE ANY TERM, PROVISION OR CONDITION OF THIS RENTAL AGREEMENT AND EXCEPT FOR THE MANUFACTURER WARRANTIES, MAKE ANY REPRESENTATION OR WARRANY ABOUT THIS RENTAL AGREEMENT OR THE EQUIPMENT. WE SHALL NOT BE LIABLE FOR ANY DELAYS IN MAKING DELIVERIES OR REPAIRS NOR IN ANY EVENT FOR SPECIAL, RESULTING OR CONSEQUENTIAL DAMAGES OR LOSS OF PROFIT OCCASIONED BY ANY BREACH OF WARRANTY OR REPRESENTATION OR RESULTING FROM THE USE OR PERFORMANCE OF THE EQUIPMENT. YOUR OBLIGATION TO PAY IN FULL ANY AMOUNT DUE UNDER THE RENTAL AGREEMENT WILL NOT BE AFFECTED BY ANY DISPUTE, CLAIM, COUNTERCLAIM, DEFENSE OR OTHER RIGHT WHICH YOU MAY HAVE OR ASSERT AGAINST THE SUPPLIER OF THE EQUIPMENT MANUFACTURER.

6. TITLE, PERSONAL PROPERTY, LOCATION and INSPECTION: WE will have title to the Equipment. If the Rental is deemed to be a security agreement, YOU grant US a security interest in the Equipment and all proceeds thereof. YOU have the right to use the Equipment for the full Rental Agreement term provided YOU comply with the terms and conditions of this Rental Agreement. Although the Equipment may become attached to real estate, it remains personal property and YOU agree not to permit a lien to be placed upon the Equipment or to remove the Equipment without OUR prior consent. If WE feel it necessary, YOU agree to provide US with waivers of interest or liens, from anyone claiming any interest in the real estate on which any lien of Equipment is located. WE also have the right, at reasonable times, to inspect the Equipment.

7. MAINTENANCE: YOU are required, at your own cost and expense to keep the Equipment in good repair, condition and working order, except for ordinary wear and tear, and YOU will supply all parts and servicing required. All replacement parts used or installed and repairs made to the Equipment will become OUR property. YOU may, with OUR prior written consent, make modifications to the Equipment, provided such modifications do not reduce the value or usefulness of the Equipment or result in the loss of any warranty or any certification necessary of the maintenance of the Equipment and such modifications must be easily removable without causing damage to the Equipment. Before returning the Equipment, YOU agree to remove such modifications and reduce the equipment to its original condition. If YOU fail to remove such modification, WE are deemed the owner of such modifications.

IF THE RENTAL PAYMENTS INCLUDE THE COST OF MAINTENANCE AND/OR SERVICE BEING PROVIDED BY THE SUPPLIER AND/OR THE MANUFACTURER, YOU ACKNOWLEDGE THAT WE ARE NOT RESPONSIBLE FOR PROVIDING ANY REQUIRED MAINTENANCE AND/OR SERVICE FOR THE EQUIPMENT. YOU WILL MAKE ALL CLAIMS FOR SERVICE AND/OR MAINTENANCE SOLELY TO THE SUPPLIER AND/OR MANUFACTURER AND SUCH CLAIMS WILL NOT AFFECT YOUR OBLIGATION TO MAKE ALL REQUIRED RENTAL PAYMENTS.

8. ASSIGNMENT: YOU AGREE NOT TO TRANSFER, SELL, RENT, ASSIGN, PLEDGE OR ENCUMBER EITHER THE EQUIPMENT OR ANY RIGHTS UNDER THIS RENTAL AGREEMENT WITHOUT OUR PRIOR WRITTEN CONSENT. YOU agree that WE may sell, assign or transfer this Rental Agreement and if WE do, the new owner will have the same rights and benefits that WE now have and will not have to perform any of OUR obligations and that the rights of the new owner will not be subject to any claims, defenses, or set-offs that YOU may have against US. Any such assignment, sale or transfer of this Rental Agreement or the Equipment will not relieve US of OUR obligations to YOU under this Rental Agreement.

9. REDELIVERY AND RENEWAL: At the end of the rental term, you shall return the Equipment in good working condition at your cost to the vendor. If you fail to return the Equipment as provided herein, this Rental Agreement will automatically renew at the same Rental Payment amount for consecutive 60-day periods with Rental Payments paid to the vendor.

10. LOSS OR DAMAGE: YOU are responsible for the risk of loss or destruction or, or damage to the Equipment. No such loss or damage relieves YOU from any obligation under this Rental Agreement. YOU agree to promptly notify US in writing of any loss or destruction or damage to the Equipment and YOU will, at OUR option, a) repair the Equipment to good condition and working order, b) replace the Equipment with like equipment in good repair, condition and working order, acceptable to US and transfer clear title to such replacement equipment to US, such equipment shall be subject to this Rental Agreement and be deemed the Equipment, or c) pay to US the present value of the total of all unpaid Rental Payments for the full Rental Agreement term plus the estimated fair market value of the Equipment at the end of the originally scheduled Rental Agreement term (the "Residual"), with accelerated Rental Payments and the Residual discounted at the lesser of (a) a per annum interest rate equivalent to that of a U.S. Treasury constant maturity obligation (as reported by the U.S. Treasury Department) that would have a repayment term equal to the remaining Rental Agreement term, all as reasonably determined by US, of (b) 3% per annum (the "Present Value Rate"), whereupon this Rental Agreement shall terminate. All proceeds of insurance received by US as a result of such loss or damage will be applied, where applicable, toward the replacement or repair of the Equipment or the payment of YOUR obligations.

11. INDEMNITY: WE are not responsible for any losses or injuries caused by the installation or use of the Equipment. YOU agree to reimburse US for and to defend US against any claim for losses or injuries caused by the Equipment. This indemnity will continue even after the termination of this Rental Agreement.

12. TAXES: YOU agree to pay all license and registration fees, sale and use taxes, personal property taxes and all other taxes and charges, relating to the ownership, rental, sale, purchase, possession or use of the Equipment as part of the Rental Payment or as billed by US. YOU agree that if WE pay any taxes or charges on YOUR behalf, YOU will reimburse US for all such payments with the next Rental Payment, plus a fee for OUR collection and administering any taxes, assessments or fees and remitting them to the appropriate authorities. YOU will indemnify US on an after-tax basis against the loss of any tax benefits anticipated at the Commencement Date arising out of YOUR acts or omissions.

13. INSURANCE: During the term of this Rental Agreement, YOU will keep the Equipment insured against all risks of loss or damage in an amount not less than the replacement cost of the Equipment, without deductible and without co-insurance. YOU will also obtain and maintain for the term of this Rental Agreement, comprehensive public liability insurance covering both personal injury and property damage for at least $100,000 per person and $300,000 per occurrence for bodily injury and $50,000 for property damage. WE will be the sole named loss payee on the property insurance and named as additional insured on the public liability insurance. YOU will pay all premiums for such insurance and must deliver proof of insurance coverage satisfactory to US. If YOU do not provide such insurance, YOU agree that WE have the right, but not the obligation, to obtain such insurance and add an insurance fee to the amount due from YOU, on which WE make a profit.

14. DEFAULT: YOU are in default of this Rental Agreement in any of the following occurs: a) YOU fail to pay any Rental Payment or other sum when due; b) YOU breach any warranty or other obligation under this Rental Agreement, or any other agreement with US; c) YOU, any partner or any guarantor dies, YOU

Become insolvent or unable to pay your debts when due; YOU stop doing business as a going concern; YOU merge, consolidate, transfer all or substantially all of YOUR assets; YOU make an assignment for the benefit of creditors of YOU undergo a substantial deterioration in YOUR financial condition; or d) YOU, any guarantor or any partner, voluntarily file, or have filed against YOU or it involuntarily, a petition for liquidation, reorganization, adjustment of debt or similar relief under the Federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency law, or trustee, receiver or liquidator will be appointed for it or a substantial part of its assets.

15. REMEDIES: WE have the following remedies if a default should occur: a)Upon written notice, declare the entire balance of the unpaid Rental Payments for the full term immediately due and payable, and for and reserve all Rental Payments and any other payments then accrued or accelerated under this Rental Agreement or any other agreement plus the Residual, with all accelerated Rental Payments plus Residual discounted to the date of the default at the Present Value Rate, but only to the extent permitted by law; b) Charge YOU interest on all monies due US at the rate of eighteen percent (18%) per year from the date of default until paid, but in no event more than the maximum rate permitted by law; c) Charge YOU a return-check or non-sufficient funds charge ("NSF Charge") to reimburse US for the time and expense incurred with respect to a check that is returned for any reason including non-sufficient or uncollected funds, each NSF Charge is stipulated and liquidated at $25.00; and d) Require that YOU return the Equipment to US and in the event YOU fail to return the Equipment, enter upon the premises peaceably with or without legal process where the Equipment is located and repossess the Equipment. Such return or repossession of the Equipment will not constitute a termination of the Rental Agreement unless WE expressly notify YOU in writing. In the event the Equipment is returned or repossessed by US and unless WE have terminated this Rental Agreement, WE will sell or re-rent the Equipment to any persons with any terms we determine, at one or more public or private sales, with or without notice to YOU, and apply the net proceeds dislocating the costs and expenses of each sale or re-rent, to YOUR obligations with YOU remaining liable for any deficiency and with any excess being retained by US. The credit for any sums to be received by US from any such rental shall be discounted to the date of the agreement at six percent (6%) per year.

YOU are also required to pay (i) all expenses incurred by US in connection with the enforcement of any remedies, including all expenses of repossessing, storing, shipping, repairing and selling the Equipment, and (ii) reasonable attorney's fees.

YOU agree that any delay of failure to enforce OUR rights under this Rental Agreement does not prevent US from enforcing any rights at a later date.

16. SECURITY DEPOSIT: WE will retain any required security deposit to insure YOUR performance of YOUR obligations. Any security deposit is non-interest bearing. WE may apply any security deposit to cure any default by YOU, in which event YOU will promptly restore any amount so applied. If YOU are not in default, any security deposit will be returned to YOU at the termination of this Rental Agreement.

17. WARRANTIES: YOU warrant and represent that the Equipment will be used for business purposes, and not for personal, family of household purposes.

18. UCC FILINGS AND FINANCIAL STATEMENTS: YOU authorize US to file a financing statement with respect to the Equipment signed by US where permitted by the Uniform Commercial Code and grant US the right to sign such financing statement on YOUR behalf. The filing of financing statement is not to be construed as evidence that any security interest was intended to be created, but only to give public notice of OUR ownership of the Equipment. If this Rental Agreement is deemed at any time to be one intended as security than YOU grant US a security interest in the Equipment and the proceeds from the sale, rent or other disposition of the Equipment. If WE feel it is necessary, YOU agree to submit financial statements (audited if available) on a quarterly basis.

19. NOTICE: Written notices will be deemed to have been given when delivered personally or deposited in the United States mail, postage prepaid, addressed to the recipient at its address above or at any other address subsequently provided in writing.

20. UCC-ARTICLE 2A PROVISIONS: YOU agree that this Rental Agreement is a Finance Lease as that term is defined in Article 2A of the Uniform Commercial Code ("UCC"). YOU acknowledge that WE have given YOU the name of the Supplier of Equipment. WE hereby notify YOU that YOU may have rights under the contract with the Supplier and YOU may contact the Supplier for a description of any rights or warranties that YOU may have under this supply contract. YOU waive any and all rights and remedies granted YOU under Sections 2A-508 through 2A-522 of the UCC including, but not limited to: the right to repudiate the Rental Agreement and reject the Equipment, the right to cancel the Rental Agreement, the right to revoke acceptance of the Rental Agreement; the right to grant a security interest in the Equipment in YOUR possession and control for any reason; or the right to recover damages for any breach of warranty.

21. CHOICE OF LAW: This Rental Agreement was made in the State of Illinois (by US having countersigned it in Buffalo Grove, Illinois); and it is to be performed in the State of Illinois by reason of the Rental Payments YOU are required to pay US in Illinois. This Rental Agreement shall in respects be interpreted and all transactions subject to this Rental Agreement and all rights liabilities of the parties under this Rental Agreement shall be determined and governed as to their validity, interpretation, enforcement and effect by the laws of the State of Illinois except for local filing requirements. YOU consent to and agree that nonexclusive personal jurisdiction over YOU and subject matter jurisdiction over the Equipment shall be with the Courts of the State of Illinois or the Federal District Court for the Northwestern District of Illinois solely at OUR option with respect to any provisions of this Rental Agreement. YOU ALSO AGREE TO WAIVE YOUR RIGHT TO A TRIAL BY JURY.

22. ENTIRE AGREEMENT; SEVERABILITY; WAIVERS; FACSIMILE: This Rental Agreement contains YOUR and OUR entire agreement and understanding. No agreements or understandings are binding on the parties unless set forth in writing and signed by the parties. Any provision of this Rental Agreement which for any reason may be held unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective without invalidating the remaining provisions of this Rental Agreement. YOU agree that a facsimile copy of this Rental Agreement with YOUR facsimile signature may be treated as an original and will be admissible as evidence of this Rental Agreement.

Initials

To:    AEL Financial, LLC
       600 North Buffalo Grove Road
       Buffalo Grove, IL 60190

Gentlemen:

    I,    Joe Guarglia, Jr.    Vice President of City Auto Parts of Durham, Inc. d/b/a City Auto Salvage City do hereby certify that    Joseph R. Guarglia, Sr.    is    President    of said corporation, and as such, was, is, and will continue to be authorized and empowered to execute a Rental Agreement between said corporation, and AEL Financial, LLC.

    IN WITNESS WHEREOF, I have affixed my name as Vice President of said corporation and have caused the corporate seal of the corporation to be affixed hereto this 28th day of June, 2006

                        Vice President

SEAL



Capital 4, Inc.
1010 North San Jacinto
Houston, Texas 77002

Voice:   (713) 228-9928
Fax:     (713) 237-1118

Invoice
Invoice Number: AEL0030

Invoice Date:
October 18, 2006

Sold To:   AEL Financial
           600 North Buffalo Grove Road
           Buffalo Grove, IL 60089

Ship To:   City Auto Parts of Durham, Inc
           1301 South Miami Blvd
           Durham, NC 27703

| Customer ID | | Customer PO | | Payment Terms | |
| AEL | | | | Net 10 Days | |
| | | Capital 4 Work Order | | Ship Date | Due Date |
| Quantity | Item | Description | Unit Price | | Extension |
| 1 | | City Auto Parts of Durham, Inc Funding Amount | 73,500 00 | | 73,500 00 |
| | | 60 Month Deferred Maintenance Fee Paid Monthly for 60 Months: $1,316 53 | | | |
| 1 | | 1st Months Payment to Capital 4, Inc | (3,208 87) | | (3,208 87) |
| 1 | | Documentation Fee | (100 00) | | (100 00) |
| | | **TELEPHONE SYSTEM EQUIPMENT** | | | |
| 1 | | 3Com Superstack 3 NBX V5000 Chassis | | | |
| 1 | | 3Com Superstack 3 NBX V3000 Chassis | | | |
| 7 | | 3Com NBX 3100 Entry SL Phone | | | |
| 32 | | 3Com NBX 3102 Business Phone 10/100mb | | | |
| 7 | | 3Com NBX Group 0 License | | | |
| 18 | | 3Com NBX Group 2 License | | | |
| 1 | | 3Com NBX Ploycom Device License | | | |
| 2 | | Baseline Switch 2226-PWR Plus | | | |
| 1 | | NBX Line Card - US Version | | | |
| 1 | | Polycom Sound Station IJP 3000, 3Com NBX | | | |
| 4 | | 3Com NBX AA VM Upgrade 1 Port | | | |
| 1 | | 3Com 3101 Basic Phone 10/100mb | | | |
| 1 | | 3Com NBX Group 1 Phone License | | | |
| | | **NETWORK ACCESS EQUIPMENT** | | | |
| 1 | 3C10432A | 3Com Mediant Gateway M1000 | | | |
| 1 | 3C13701-US | 3Com Router Variable/ Ethernet Chassis 5012 | | | |
| 1 | 3C13720 | 3Com Router SIC Fractional T1 1 Port | | | |
| 1 | 3Com | 3Com Installation, Programming &Training | | | |

| | |
| --- | --- |
| Subtotal | 70,191 13 |
| Sales Tax | |
| Total Invoice Amount | 70,191 13 |
| Payment Received | |
| **TOTAL** | 70,191 13 |

To:     ABL Financial, LLC
        600 North Buffalo Grove Road
        Buffalo Grove, IL 60190

Gentlemen:

I, ____Joe Guarglia, Jr._____ Vice President of City Auto Parts of Durham, Inc. d/b/a City

Auto Salvage City do hereby certify that ___Joseph R. Guarglia, Sr._____ is ___President___

of said corporation, and as such, was, is, and will continue to be authorized and empowered to execute a

Rental Agreement between said corporation, and ABL Financial, LLC.

        IN WITNESS WHEREOF, I have affixed my name as Vice President of said corporation

and have caused the corporate seal of the corporation to be affixed hereto this 28th day of June, 2006

                                        _____
                                        Vice President

SEAL

08CV3490
JUDGE DOW JR.
MAGISTRATE JUDGE MASON

**EXHIBIT B**     PH

## The Law Offices of Brian Ira Tanenbaum, Ltd.

*Integrating Law with Business*

April 22, 2008

<u>VIA FEDERAL EXPRESS</u>

Mr. Joseph R. Guarglia, Sr., President and individually
City Auto Parts of Durham, Inc. d/b/a City Auto Salvage City
3848 Burlington Road
Greensboro, NC 27405

> Re:  Rental Agreement with City Auto Parts of Durham, Inc. d/b/a City Auto
>       Salvage City
>       Our File No. 541741

Dear Mr. Guarglia,

We are counsel to AEL Financial, LLC ("AEL"). As you are aware, on or about October 12, 2006, as President of City Auto Parts of Durham, Inc. d/b/a City Auto Salvage City ("City Auto") you entered into a certain Rental Agreement and accompanying personal guaranty with our client.

According to our client, you have defaulted under the terms and conditions of the Rental Agreement and personal guaranty, by having failed to, among other things, make the monthly lease payments due AEL since approximately October 2007. By failing to make the required monthly lease payments to AEL, City Auto and yourself, as personal guarantor, have both breached the unconditional obligation to pay AEL.

As you know, the monthly lease payments due under the Rental Agreement are $1,800.19. Thus, as of May 1, 2008, AEL is owed the sum of $14,401.52. In addition to the foregoing, you are responsible for the payment of AEL's legal fees and costs associated with said defaults.

Please be advised that unless you remit to the undersigned the sum of $14,401.52 in a check made payable to AEL Financial, LLC by no later than May 5, 2008, our client will accelerate all sums due under the Rental Agreement (and personal guaranty), without further notice, and will institute legal proceedings against City Auto and yourself, personally, to recover all sums due thereunder, including AEL's cost of collection and attorneys' fees. For your information, upon acceleration, the balance due under the Rental Agreement (and the personal guaranty) will be approximately $81,529.00, exclusive of attorneys' fees and court costs.

The Law Offices of Brian Ira Tanenbaum

*Integrating Law with Business*

Mr. Joseph R. Guarglia
April 22, 2008
Page 2

     Please contact the undersigned immediately to discuss this matter further.  We thank you in advance for your prompt attention to this matter.

          Sincerely,

          John A. Benson, Jr.

cc:    Mr. James G. Bailey, Mr. Robert Ragland & Mr. Rob Nicoll (via facsimile)