**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AEL FINANCIAL LLC, | ) | |
| | ) | Case No. 08-cv-3490 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CITY AUTO PARTS OF DURHAM, INC., | ) | |
| JOSEPH R. GUARGLIA, SR., and | ) | |
| JOSEPH R. GUARGLIA, JR., | ) | |
| | ) | |
| Defendants/Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL 4, INC., ISHMAEL | ) | |
| VILLA-LOBOS, P. DAVIS DAWSON, | ) | |
| and METROPARK COMMUNICATIONS, | ) | |
| INC., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are several motions filed by Plaintiff: (1) a motion to strike Defendants' jury demand, (2) a motion to dismiss Defendants' counterclaims, and (3) a motion to strike Defendants' eight affirmative defenses. For the reasons set forth below, Plaintiff's motion to strike Defendants' jury demand [37] is granted; Plaintiff's motion to dismiss Defendants' counterclaims [40] is granted in part and denied in part, although the dismissals are without prejudice; and Plaintiff's motion to strike Defendants' affirmative defenses [39] is granted in part and denied in part.

Plaintiff, AEL Financial, LLC ("AEL"), filed this lawsuit on June 18, 2008 [1] against Defendants City Auto Parts of Durham, Inc. ("City Auto"), as well as Joseph R. Guarglia, Sr.,

and Joseph R. Guarglia, Jr. ("the Guarglias") (collectively "Defendants"). The Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.

AEL's amended complaint [77] alleges that Defendant City Auto breached a lease for equipment and that the Guarglias breached an accompanying guaranty. Defendants' amended answer [90] includes eleven affirmative defenses, eight counterclaims, and a jury trial demand.

## I. Plaintiff's Motion to Strike Defendants' Jury Demand Request

### A. Background

AEL leases industrial and commercial equipment to various businesses. (Compl. ¶ 4.) In or around late June 2006, City Auto entered into an agreement with AEL (the "Rental Agreement") and the Guarglias executed an accompanying guaranty. According to AEL, the Rental Agreement was a lease for telecommunications equipment for which City Auto agreed to pay $3,208.87 per month. (*Id.* ¶ 9-10.) According to Defendants, the Agreement was "a funding agreement in furtherance of" an agreement for telecommunications services (the "Service Agreement") that it entered into with the Third-Party Defendants. (Answer ¶ 9.) The Rental Agreement is captioned: "Capital 4 Financial Services Rental Agreement, a program of AEL Financial, LLC." The text of the Rental Agreement states that it is a "Finance Lease" as defined by Article 2A of the Uniform Commercial Code ("UCC"). (The Rental Agreement hedges on its Article 2A status, as it includes a security interest in the leased equipment and proceeds "[i]f the Rental Agreement is deemed to be a security agreement," which would be governed under Article 9 of the UCC. (Compl. Ex. A. at 1, ¶ 2.)) According to Defendants, they were told, in effect, that making payments under the Rental Agreement was how they were supposed to make payments under the Service Agreement. (Countercl. ¶¶ 42-51.)

After making payments for over a year, City Auto stopped making payments. (Compl. ¶ 11.) Defendants concede that City Auto made payments for over a year and that it still has possession of (and uses) the leased equipment. (Answer ¶¶ 11, 15.) Among their arguments, Defendants state that there was no meeting of the minds with respect to the Rental Agreement. (Answer at 12.) They also deny that the Guarglias are liable on the Guaranty. (Answer ¶ 27.)

AEL's amended complaint comprises three state law claims: (i) breach of contract, (ii) breach of guaranty, and (iii) replevin. Defendants include in their answer a demand for a jury trial.

**B.      Validity of the Jury Waiver**

The jury waiver that is the subject of Plaintiff's motion to strike is noted in three places in the Rental Agreement, twice in the body of the agreement itself: once on the first page of the document in paragraph 9, once on the second page in paragraph 21. Paragraph 21 is entitled "Choice of Law." It is reproduced in full below:

> **21. CHOICE OF LAW: This Rental Agreement was made in the State of Illinois (by US having countersigned it in Buffalo Grove, Illinois); and it is to be performed in the State of Illinois be [sic] reason of the Rental Payments YOU are required to pay US in Illinois. This Rental Agreement shall in respects [sic] be interpreted and all transactions subject to this Rental Agreements and all rights liabilities [sic] of the parties under the Rental Agreement shall be determined and governed as to their validity, interpretation, enforcement and effect by the laws of the State of Illinois except for local filing requirements. YOU consent to and agree that non-exclusive personal jurisdiction over YOU and subject matter jurisdiction over the Equipment shall be with the Courts of the State of Illinois or the Federal District Court for the Northwestern [sic] District of Illinois solely at OUR option with respect to any provisions of this Rental Agreement. YOU ALSO AGREE TO WAIVE YOUR RIGHT TO A TRIAL BY JURY.**

(Compl. Ex. A (emphasis in original).)

The Rental Agreement includes one more jury waiver warning. The Guarglias guaranteed City Auto's payment under the Rental Agreement ("the Guaranty"). The jury trial

waiver in the Guaranty was placed immediately above the Guarglias' signature line. After reciting the terms of the guaranty in plain text, the waiver states, in bolded text: "**This guaranty is governed by and constituted in accordance with the laws of the State of Illinois and I consent to non-exclusive personal jurisdiction in any state or federal courts in Illinois and waive trial by jury.**" (Compl. Ex. A (emphasis in original).)

With regard to the parties' arguments about the validity of the waivers, the Court notes that neither party cites the applicable standard, although some of the arguments do map onto the applicable standard. Plaintiff's motion to strike Defendants' jury demand states that the jury waiver inquiry centers on whether the waiver was "knowing and voluntary." In support of its argument that Defendants' jury waiver was knowing and voluntary, Plaintiff points out that one of the waivers was in capital letters and that the waiver in the Guaranty was positioned at the end of a mere nine lines of text, immediately above the Guarglias' signature line. Defendants' response also argues that the standard for a jury trial waiver is knowing and voluntary, although Defendants disagree with Plaintiff's application of the standard. In support of their arguments— and the appropriateness of the knowing and voluntary standard—Defendants cite cases from this district for the twin propositions that the validity of a jury trial waiver provision is a matter of federal law and that the inquiry demands a searching eye. The cases cited by Plaintiff consider factors such as (i) bargaining power, (ii) whether the waiving party had the opportunity to consult a lawyer, (iii) the conspicuousness of the waiver provision, and (iv) whether there were negotiations over the waiver provision. See, *e.g.*, *Whirlpool Fin. Corp. v. Sevaux*, 866 F. Supp. 1102, 1105 (N.D. Ill. 1994); *In re Reggie Packing Co.*, 671 F. Supp. 571, 573 (N.D. Ill. 1987); see also *Leasing Svc. Corp. v. Crane*, 804 F.2d 828, 832-33 (4th Cir. 1986); *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755-56 (6th Cir. 1985); *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565

F.2d 255, 257-58 (2d Cir. 1977); *Heller Fin., Inc. v. Finch-Bayless Equip. Co.*, 1990 WL 77500 (N.D. Ill. May 31, 1990). Invoking the factors, Defendants contend that the waiver provisions at issue here were "not so conspicuous as to insure a knowing and voluntary waiver * * *. Defendants never saw the waiver provision until this lawsuit was filed, were not aware that the provision existed, and never intended to waive their right to a jury trial * * *." [51, at 9]. Defendants further state that they did not have a lawyer, the text of the provisions was small and "not highlighted," Plaintiff had more "bargaining power," and Defendants did not have an attorney or legal training [*id.* at 9-10].

Most of the factors cited by Defendants, however, do not bear on the analysis. The Seventh Circuit, in a split from the circuit court cases cited above, has held that when a contract is governed by state law, the validity of a jury trial waiver similarly is governed by state law. *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991, 993-94 (7th Cir. 2008). In this case, as in the *IFC* case, the Rental Agreement is governed by the UCC, which Illinois has adopted.[1] As Judge Easterbrook's opinion in *IFC* explained, unequal

---

[1] The Rental Agreement states that it is a "Finance Lease" as defined under Article 2A of the UCC. Defendants have not specifically addressed in their briefing whether the UCC governs the Rental Agreement, although they describe the Rental Agreement as a "finance lease." (See Countercl. ¶ 55.) Even if the Rental Agreement were not governed by the UCC, the Court would not perceive any basis for altering the analysis.

The task of the Court is to apply the law in the manner that the Court believes the Illinois Supreme Court would apply it. *Rennert v. Great Dane Ltd. Partnership*, 543 F.3d 914, 917 (7th Cir. 2008). The "knowing and voluntary" standard for evaluating jury waivers has been used by Illinois courts in criminal cases. See, *e.g.*, *People v. Brown*, 661 N.E.2d 287, 299-300 (Ill. 1996). In contrast, the Illinois Supreme Court has expressed skepticism of the knowing and voluntary standard in civil cases. *Melena v. Anhueser-Busch, Inc.*, 847 N.E.2d 99, 106 (Ill. 2006) (upholding an arbitration provision).

Although the *Melena* case addressed the validity of *arbitration agreements* that included jury trial waivers rather than jury trial waivers alone, and is therefore distinguishable, the Court is not persuaded that Illinois courts would prove more skeptical of agreements in which a party gives away *less* than what is given away in an arbitration agreement—at least when the waiver is effected by a commercial actor. *Cf. Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 215 (Ill. 2004); *Baxter Int'l, Inc. v. Am. Guarantee & Liability Ins. Co.*, 861 N.E.2d 263, 296 (Ill. App. Ct. 2006); *Rubino v. Circuit City Stores, Inc.*, 758

bargaining power and form contracts do not invalidate the plain language of a jury trial waiver. *Id.* at 992-93 (noting that form contracts are common and enforceable). And the fact that Defendants did not separately negotiate the provision does not alter the jury-trial-waiver analysis: after all, there are many telecommunications firms and "all a customer need do is say no to any given offer and let the competition continue." *Id.* at 992. What *does* matter is the plain language of the provisions: Illinois law "honors straightforward terms with understandable meanings." *Id.* at 992 (citing *Nicor, Inc. v. Associated Elec. & Gas Svcs., Ltd.*, 860 N.E.2d 280, 285-86 (Ill. 2006)).

Unless the UCC specifies otherwise, a lease is enforceable according to its terms. 810 ILCS 5/2A-301. Viewing Defendants' response generously, Defendants seem to be arguing that on the facts of the case the jury trial waiver provisions are unconscionable. Unconscionability of a contractual term provides grounds for non-enforcement under the UCC. 810 ILCS 5/2A-108 ("If the court as a matter of law finds a lease contract or any clause of a lease contract to have been unconscionable at the time it was made, the court may refuse to enforce the lease contract [or provide other specified remedies]."). *A priori*, however, there is nothing unconscionable about a term waiving the right to a jury trial: "Merchants often prefer professional adjudicators (be they judges or arbitrators) over amateurs." *IFC*, 512 F.3d at 992.

Defendants do point to specific aspects of the Rental Agreement that, in theory, could be deemed unconscionable. Specifically, Defendants state that the type-face of the Rental

---

N.E.2d 1, 11 (Ill. App. Ct. 2001); *IFC*, 512 F.3d at 992. See also *In re Bank of Am., N.A.*, 278 S.W.2d 342, 343-44 (Tex. 2009) (holding that there is no presumption against contractual jury trial waivers); *Fairfax Co. of Va., LLC v. Samson Realty, LLC*, 2007 WL 5971780, at *3 (Va. Cir. Sept. 11, 2007) (knowing and voluntary standard for contractual jury waiver but placing the burden on the party seeking relief); 42 A.L.R. 5th 53 § 3 (1996) (weight of authority upholds contractual waiver of jury trial right). But see *Grafton Partners L.P. v. Superior Ct.*, 116 P.3d 479, 491-92 & n.12 (Cal. 2005) (observing that "perhaps most" courts impose a presumption against waiver and apply a "knowing and voluntary" standard).

Agreement was small, intimating that the jury trial waiver provisions were not conspicuous. If a term is so difficult to find, read, or understand that a person cannot be said to have agreed to it, the term may be procedurally unconscionable. *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006). As Plaintiff points out, though, only in extreme cases will courts invalidate waiver clauses due to their inconspicuous nature. See *In re Reggie Packing Co., Inc.*, 671 F. Supp. 571, 573-74 (N.D. Ill.) (citing *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (waiver 'literally buried' in eleventh paragraph of a 16-clause agreement)); *Dreiling v. Peugeot Motors of Am., Inc.*, 539 F. Supp. 402, 403 (D. Colo. 1982) (waiver located on page 20 of a 22-page standardized form contract); *cf.* also *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1980) (considering, as part of the unconscionability analysis, whether terms were "hidden in a maze of fine print"); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 595 (1991) (enforcing a forum selection clause contained on the face of a cruise ticket). Here, the Rental Agreement is a two-page document, and there is at least one jury waiver provision on each page. On the second page, the pertinent text is capitalized and in bold lettering, and it is located directly above where one of the Guarglias initialed the document. The jury waiver in the guaranty on page one of the Rental Agreement is located directly above Defendant Guarglias' signature and, again, is in bold lettering. And while it is true that the text was small, *all* of the text in the Rental Agreement was small and the jury waiver provisions were made to stick out. They were not smuggled into the document and hidden by larger text. Accordingly, the Court concludes that the jury waiver provisions in the equipment lease and guaranty are not so inconspicuous that they are unconscionable.

As stated above, if a provision cannot be *understood* it may be found unconscionable on that basis. Notably, Defendants do not contend that they did not understand what it means to waive a jury trial. Rather, they state that they never "saw" the provision at issue. It is axiomatic, however, that contracting parties have a duty to read the contracts they sign. *Mt. Zion State Bank & Trust v. Weaver*, 589 N.E.2d 983, 986 (Ill. App. Ct. 1992) ("[The] rule that a person signing a contract is under a duty to read it and cannot complain as to misrepresentations as to its contents has long prevailed in this State."); *Bien v. Fox Meadow Farms Ltd.*, 574 N.E.2d 1311, 1315 (Ill. App. Ct. 1991) (a plaintiff who fails to exercise reasonable caution before signing a contract is not entitled to relief). If all that one side in a contract dispute had to do was assert that it had not read an agreement, then there could be no such thing as contract, at least not without a return to formalism in contract that is inconsistent with much of the UCC and modern commerce generally. *Cf.* Randy E. Barnett, *Some Problems with Contract as Promise*, 77 CORNELL L. REV. 1022, 1027-28 (1992) (describing the consent theory of contract, which states that a promise should be legally enforceable if it is "made in such a way as to convey to a promise the message that the promisor intends to be legally accountable for nonperformance"); Restatement (Second) of Contracts § 19 (conduct of a party may manifest assent even where unintended). That Defendants did not read the Rental Agreement does not furnish them with a tool for invalidating the jury waiver.

Finally, procedural unconscionability does take into account lack of bargaining power, a factor highlighted by Defendants. *Razor*, 854 N.E.2d at 622. However, Defendants' argument on this score is both unconvincing and insufficient as a matter of law. The source of Defendants' claimed lack of bargaining power is the fact that the contracts in question were form contracts. That alone is not enough to show a lack of bargaining power. *O'Callaghan v. Waller &*

*Beckwith Realty Co.*, 155 N.E.2d 545, 547 (Ill. 1959). Bargaining power refers to the ability of the parties to alter the price (or other terms) of a contract. Omri Ben-Shahar, *A Bargaining Theory of Default Rules*, 109 COLUM. L. REV. 396, 404 (2009). Although the contracts involved here were form contracts—indicating the absence of negotiation—Defendants could have walked away from the transaction or made their own offer, as there are many providers of telecommunications services. *IFC*, 512 F.3d at 992. In short, Defendants have made no showing that Plaintiffs were able to exert bargaining power. In addition, Illinois courts are wary of invalidating agreements based on unequal bargaining power, particularly where, as here, the parties to the contract are not consumers. *Razor*, 854 N.E.2d at 622-23 (even where consumers were involved, additional factors were needed to tip in favor of unconscionability); *Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1301 (Ill. 1997) (noting the "general[] reluctan[ce]" of Illinois courts to invalidate a contract based on unequal bargaining power); *Williams v. Jo-Carroll Energy, Inc.*, 890 N.E. 2d 566, 571 (Ill. App. Ct. 2008) (arbitration agreement between dairy farmer and sole provider of electricity was valid).

Regardless of the legal framework for evaluating Defendants' arguments, the arguments fail to pass muster: courts in Illinois generally are reluctant to invalidate contract provisions based on unconscionability, both parties are business entities, the terms of the Rental Agreement are clear and conspicuous, and the jury trial waiver is repeated three times in the Rental Agreement. Plaintiff's motion to strike Defendants' jury demand [29] is granted.

### B.    Scope of Waiver

Defendants argue that even if the Court grants Plaintiff's motion to strike, "Defendants should still be permitted to have a trial by jury on * * * their claims against (1) Plaintiff for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act; (2) Capital 4 for

contractual indemnity; (3) Metropark for negligent misrepresentation; (4) Capital 4 for violations of the Texas Deceptive Trade Practices-Consumer Protection Act; (5) Plaintiff and Capital 4 for civil conspiracy; and (6) Villa-Lobos and Dawson to pierce the corporate veil" [53, at 11].

As a threshold matter, no motion to strike Defendants' jury demand has been brought by the Third-Party Defendants. The only issue before the Court, as Plaintiff's arguments properly anticipate [55, at 12], is the validity of the jury trial waiver with respect to Plaintiff. And because, as discussed below, the Court grants Plaintiff's motion to dismiss Defendants' counterclaims under the Illinois Consumer Fraud and Deceptive Business Practices Act and Plaintiff's motion to dismiss Defendants' civil conspiracy counterclaim—both without prejudice—the Court need not limit the scope of Defendants' jury trial waiver at this time. However, in the event that Defendants successfully re-plead their counterclaims and allege that Plaintiff fraudulently *induced* Defendants to sign the Rental Agreement, then the jury waiver would apply. See *IFC*, 512 F.3d 989 (noting, however, that the law with respect to fraud in factum, is less clear).

### III.  Plaintiff's Motion to Dismiss Counts I, II, III and VII of Defendants' Counterclaims

Plaintiff, variously invoking Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, moves to dismiss four of Defendants' counterclaims. Count I is a claim for "mistake of fact." Count II is a claim for fraud. Count III is a claim for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505/1 *et seq.*). Count VII is a claim for civil conspiracy. As explained below, Plaintiff's motion is denied with respect to Count I and granted without prejudice with respect to Counts II, III, and VII.

## A. Legal Standards

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead "the circumstances constituting fraud * * * with particularity." *In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996). The rule is designed "to force a plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). To that end, the "circumstances" of fraud that a plaintiff must include in her complaint are "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was

communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Svcs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1075 (7th Cir. 1997)); *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 523-24 (7th Cir. 1993). A fraud claim cannot be based on "information and belief" unless the plaintiff "states the grounds for his suspicions." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992).

### B. Analysis

Plaintiff's motion to dismiss Counts I, II, III, and VII of Defendants' counterclaims is granted in part and denied in part. The motion to dismiss is denied with respect to Count I and granted without prejudice with respect to Counts II, III, and VII.

### 1. Count I—mistake

Plaintiff moves to dismiss Count I, which is a counterclaim for mutual or unilateral mistake of fact.[2] In support of its motion, Plaintiff argues that there was no mutual mistake because there was no common misconception among the parties [42, at 11]. Plaintiff similarly argues that as a factual matter there was no unilateral mistake of fact in this case [42, at 13]. Plaintiff's motion was brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's motion to dismiss Count I is denied. The arguments made by Plaintiff are not well taken at the motion to dismiss phase because they speak to the factual sufficiency, rather than legal sufficiency, of Defendant's counterclaim. A motion to dismiss pursuant to Rule 12(b)(6) tests the latter, not the former. *Gibson*, 910 F.2d at 1520. Therefore, Plaintiff's arguments about whether, as a factual matter, one side was (or both sides were) in fact mistaken when Plaintiff and Defendant entered into the Rental Agreement cannot carry the day at this

---

[2] The Court construes Defendants' counterclaim as an action for rescission under Illinois law. See, *e.g.*, *United City of Yorkville v. Village of Sugar Grove*, 875 N.E.2d 1183, 1194-95 (Ill. App. Ct. 2008) (claim for rescission based on unilateral or mutual mistake).

stage. For that reason, Plaintiff's motion to dismiss Count I of Defendant's counterclaim is denied.

### 2. Count II—fraud

Plaintiff argues that Defendants fail to plead fraud with the particularity required by Federal Rule of Civil Procedure Rule 9(b). The Court agrees.

In order to prevail on a claim for common law fraud in Illinois, a Plaintiff must prove: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 591 (Ill. 1996). A person pleading fraud need not reveal the theory of his or her case. *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993) (explaining that for Rule 9(b) purposes a complaint need "only state the misrepresentation, omission, or other action or inaction that the plaintiff claims was fraudulent" and further explaining that the theory of a fraud claim is tested by a Rule 12(b)(6) motion to dismiss rather than a Rule 9(b) motion). Rather, at the pleading stage a "general outline of the fraud scheme sufficient to reasonably notify the defendants of their purported role in the fraud" will suffice. *Whitley v. Taylor Bean & Whitacker Mortgage Corp.*, 607 F. Supp. 2d 885, 897 (N.D. Ill. 2009) (quotation marks and citation omitted).

Count II of Defendants' counterclaim sets out the following allegations: Plaintiff was aware of the Service Agreement that Defendants entered into with Capital 4 (Countercl. ¶ 114); Plaintiff, *upon information and belief*, falsely represented to Plaintiff's sales agent (Metropark, which was Capital 4's vendor) that the agreement "complied" with the service contract or alternatively Plaintiff was part of a conspiracy with Metropark (*id.* ¶¶ 115-16); Plaintiff

"tendered the funding agreement and made false representations to Metropark with the intent to induce and deceive Defendants into executing the funding agreement to their detriment" (*id.* ¶ 117); and Defendants reasonably relied on Metropark and the content of the service agreement (*id.* ¶ 118).

Defendants' allegations are insufficient under the Federal Rules. The allegations do little more than recite the elements of the cause of action. And, critically for Rule 9(b) purposes, the fraudulent statements alleged in Defendants' counterclaim are based on "information and belief." The Seventh Circuit teaches that a fraud claim cannot be based on information and belief unless the plaintiff pleads the grounds for his suspicions. *Uni\*Quality*, 974 F.2d at 924 (holding, on that basis, that dismissal under Rule 9(b) was appropriate); see also *Taylor Bean*, 607 F. Supp. 2d at 897; *United States ex rel. Kennedy v. Aventis Pharm., Inc.*, 512 F. Supp. 2d 1158, 1167 (N.D. Ill. 2007); *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 953 (N.D. Ill. 2006).

Here, Defendants' counterclaim contains general allegations of false representations based only on information and belief. (See Countercl. ¶¶ 115-16.) The allegations do not state what fraudulent statements or omissions were made or when they were made. Although Defendants' response adds some flesh to its counterclaim, as currently drafted Count II refers only generally to "false representations" and does not state what false representations were made. (Earlier in the Defendants' counterclaim, Defendants suggest that Third-Party Defendant Metropark was merely negligent in how it conveyed information to Defendants. (Countercl. ¶ 53.) That allegation was incorporated by reference into the fraud claim.) And although Defendants are correct that the heightened pleading standard in Rule 9(b) may be relaxed when information is peculiarly within the control of one party, Defendants have not stated what facts

stoke their suspicions that they were defrauded. *Bankers Trust*, 959 F.2d at 683 (fraud claims require more of a "precomplaint inquiry * * * [than] rumor or hunch").

For the foregoing reasons, Plaintiff's motion to dismiss is granted, although the dismissal is without prejudice. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 782 (7th Cir. 2007) ("Failure to provide fair notice should not normally warrant dismissal *with prejudice*.").

### 3. Count III—statutory fraud

Defendants claim in Count III of their counterclaim that Plaintiff violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*) (the "Act"). Plaintiff argues that dismissal is warranted for three reasons. First, Defendants do not meet the definition of a "consumer" under the Act. A consumer is "any person who *purchases* or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use * * *." 815 ILCS 505/1(e) (emphasis added). Plaintiff contends that because Defendants leased their equipment (instead of purchasing it), they cannot be consumers. Second, Plaintiff argues that because Defendants are not consumers, they must—but have not—pleaded that they can meet the heightened consumer nexus test by demonstrating that their claims implicate consumer protection concerns. Third, Plaintiff asserts that Defendants have failed to plead their claim with the particularity that Rule 9(b) requires. The Court concludes that the first argument fails, which takes the second argument with it. Plaintiff meets with success, however, on its third argument.

As to Plaintiff's first argument—that Defendants are not consumers within the meaning of the Act because the underlying transaction was a lease rather than a "purchase"—Defendants have not responded. Under the Act, a person includes a corporation. 815 ILCS 505/1(c). A consumer is defined as any person who purchases merchandise or contracts to purchase

merchandise. 815 ILCS 505/1(e). The question, then, is whether a lease is a purchase within the meaning of the Act. In Illinois, it appears that the answer is yes. There are several reported cases in Illinois in which lessees have claimed violations of the Act. See, *e.g.*, *Gehrett v. Chrysler Corp.*, 882 N.E.2d 1102, 1114-15 (Ill. App. Ct. 2008) (upholding verdict in favor of automobile lessees); *Carter v. Mueller*, 457 N.E.2d 1335, 1341-42 (Ill. App. Ct. 1983) (lessee of residential apartment had made out a *prima facie* case of fraud under the Act such that dismissal at the motion to dismiss phase was inappropriate); *Abt v. Mazda Am. Credit*, 25 F. Supp. 2d 860, 865 (N.D. Ill. 1980) (automobile lessee's claim under the Act could not be decided at the motion to dismiss phase). The courts make no mention of the consumer nexus test in these cases. The Court's further research did not uncover cases supporting Plaintiff's contention that corporate-lessees are not consumers within the meaning of the Act, nor has Plaintiff offered such authority. The Court need not address Plaintiff's second argument, which could exert force only if Defendants had not sufficiently alleged their consumer status under the Act.

That leaves Plaintiff's third argument—that Defendants have failed to plead fraudulent or deceptive practices with sufficient particularity under Federal Rule of Civil Procedure 9(b). A complaint alleging a violation of the Illinois Consumer Fraud Act must be pleaded with the particularity that Rule 9(b) requires. See, *e.g.*, *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 731 (N.D.Ill. 2005). Defendants' response to Plaintiff's motion is the same with respect to Count III as it was with to Count II, and the defects that led to the dismissal of the latter similarly permeate Count III. Therefore, Plaintiff's motion to dismiss Count III is granted without prejudice.

### 4. Count VII—civil conspiracy

Count VII of Defendants' counterclaim alleges a civil conspiracy. This is the meat of Defendants' counterclaim: "Upon information and belief, Plaintiff and Capital 4 had an agreement to allow Plaintiff to surreptitiously obtain a fraudulent funding agreement from Defendants for a 60-month lease of [the telecommunications equipment listed in the Rental Agreement]." (Countercl. ¶ 161.) Plaintiff further alleges that "[a] civil conspiracy existed between Plaintiff and Capital 4" (*id.* ¶ 162) and that "Plaintiff and/or Capital 4 engaged in fraudulent, deceptive, and wrongful conduct in furtherance of the civil conspiracy." (*Id.* ¶ 163.)

The (applicable) elements of a civil conspiracy are (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action an unlawful purpose, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 240 (Ill. App. Ct. 2007).

Plaintiff correctly argues that, when the underlying conspiracy is fraud, a person seeking relief must plead fraud with particularity. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (noting that "Rule 9(b) applies to 'averments of fraud,' not claims of fraud"). As with the other averments of fraud in Defendants' counterclaim, the fraudulent statements are based on information and belief and Defendants have not pleaded the facts that stoke their suspicion of fraud.

To be sure, Defendants' briefing adds some flesh to their allegations that are absent from their counterclaim. For example, Defendants state that Capital 4 "lured Defendants into [the Service Agreement] through [misrepresentations]" [56, at 30], and that Plaintiff knew that the Rental Agreement was "directly contrary to the terms of the [Service Agreement]." [*Id.*, at 31].

These are not, as Defendants argue, mere "inferences" that reasonably can be drawn from their counterclaim; they are *allegations* that do not appear in Defendants' counterclaim.

Therefore, and for the reasons stated in Part II.B.2 of this memorandum opinion and order, the Court concludes that Defendants fail to allege fraud with sufficient particularity. The dismissal of Count VII is without prejudice.

## III.  Plaintiff's Motion to Strike Defendants' Eight Affirmative Defenses

Plaintiff raises individual objections to Defendants' affirmative defenses, but they are animated by a common argument: "Defendants are attempting to modify the [Rental Agreement] that it signed with [Plaintiff] by trying to introduce either parol evidence or another separate and distinct agreement [to which Plaintiff's were not a party]" [41, at 7-8].  As explained below, Plaintiff's motion to strike eight of Defendants' affirmative defenses is granted in part and denied in part.

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(f) "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike affirmative defenses are generally disfavored but may be used to expedite a case by "remov[ing] unnecessary clutter from the case." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Man Roland, Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 578 (N.D. Ill 1999); *Codest Eng'g v. Hyatt Int'l Corp.*, 954 F. Supp 1224, 1228 (N.D. Ill 1996).  Affirmative defenses will be stricken only when they are facially insufficient, and therefore it would be inappropriate to strike an affirmative defense where the issues are complex. See *United States v. 416.81 Acres of Land*, 514 F.2d 627, 630 (7th Cir. 1975).  However, affirmative defenses are pleadings and, as such, are subject to the pleading requirements of the

Federal Rules of Civil Procedure. *Heller*, 883 F.2d at 1294 (citing *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 736-37 (N.D. Ill. 1982)).

### B. Analysis

#### 1. First affirmative defense—no meeting of the minds

Defendants assert as their first affirmative defense that the meeting of the minds required for the formation of a contract did not occur, and, as such, there is no enforceable agreement between the parties. "Defendants understood that the funding agreement with Plaintiff was for Capital 4's accounting purposes, designed to permit Plaintiff to receive and disburse the monthly fee under the [Service] Agreement, and not intended to alter the basic terms of the [Service] Agreement" [90, at 12]. Plaintiff argues that the affirmative defense should be dismissed because, in matters of contract interpretation, Illinois courts rely only on objective indicia of intent. Plaintiff takes this to mean that the Court should look only to the text of the Rental Agreement, eschew extrinsic evidence, and strike Defendant's first affirmative defense.

Plaintiff's motion to strike Defendants' affirmative defense is denied. Plaintiff is incorrect; Illinois courts do look at extrinsic evidence in cases of, for example, mutual mistake. See, *e.g.*, *Wheeler-Dealer, Ltd. v. Christ*, 885 N.E.2d 350, 355 (Ill. App. Ct. 2008). And a mutual mistake may defeat a plaintiff's effort to prove "that the parties reached a meeting of the minds resulting in an actual agreement between them." *Id.* Moreover, Defendants are being given leave to re-plead their fraud counterclaims and Defendants also assert fraud as an affirmative defense. A meeting of the minds is "legally inconsistent" with a finding of fraud. *Action Constr. & Restoration, Inc. v. W. Bend Mut. Ins. Co.*, 748 N.E.2d 824, 827 (Ill. App. Ct. 2001) ("The two parties could not have had a meeting of the minds if [the defendant]

fraudulently concealed a material fact."). Therefore, Plaintiff's motion to strike Defendants' first affirmative defense is denied.

### 2. Defendants' second affirmative defense—lack of consideration

Defendants assert as their second affirmative defense that they received no consideration in exchange for their promise to pay Plaintiff a monthly fee for the telecommunications equipment. To be valid, a contract must contain an offer, acceptance, and consideration. *Halloran v. Dickerson*, 679 N.E.2d 774, 782 (Ill. App. Ct. 1997) (citing *Ogle v. Hotto*, 652 N.E.2d 815, 819 (Ill. App. Ct. 1985)). Consideration is some bargained-for act or forbearance, consisting of some benefit accruing to the promisor or some detriment undertaken by the promisee. See, *e.g.*, *Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1145 (Ill. 1999) ("consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them") (citing *Lipkin v. Koren*, 64 N.E.2d 890 (Ill. 1946); *Steinberg v. Chicago Med. Sch.*, 371 N.E. 2d 634, 639 (Ill. 1977) (citing *Green v. Ashland Sixty-Third State Bank*, 178 N.E. 468 (Ill. 1931)). Defendants argue that they did not get anything from Plaintiff in exchange for their promise (Answer ¶ 5); Plaintiff argues that Defendants did (Compl. ¶ 5). Because Plaintiff has not shown that Defendant's second affirmative defense is facially deficient, Plaintiff's motion to strike that affirmative defense is denied.

### 3. Defendants' third affirmative defense—mutual and unilateral mistakes of fact

Defendants' affirmative defenses 3(a) and 3(b) are mutual and unilateral mistakes of fact. Under Illinois law, if there is a mutual mistake of fact as to a material matter affecting the substance of the contract, that contract may be rescinded. *Cameron v. Bogusz*, 711 N.E.2d 1194, 1197 (Ill. App. Ct. 1999). See also *Bank of Naperville v. Holz*, 407 N.E.2d 1102, 1106 (Ill. App. Ct. 1980); *Spies v. De Mayo,* 72 N.E.2d 316 (Ill. 1947). The Court has already discussed mutual

mistake in reference to Defendants' meeting of the minds defense. To rescind an agreement on the basis of unilateral mistake, (1) the mistake must be related to a material feature of the contract; (2) it must have occurred notwithstanding the exercise of reasonable care; (3) it must be of such grave consequence that enforcement of the contract would be unconscionable; and (4) the non-mistaken party must be able to be returned to the *status quo ante*. *Bogusz*, 711 N.E.2d at 1198 (citing *Brzozowski v. Northern Trust Co.,* 618 N.E.2d 405 (Ill. App. Ct. 1993); *Wil-Fred's, Inc. v. Metropolitan Sanitary District of Greater Chicago,* 372 N.E.2d 946 (Ill. App. Ct. 1978)).

Again, because Plaintiff has not shown that Defendants' third affirmative defense is facially deficient, Plaintiff's motion to strike the affirmative defense is denied.

### 4.    Defendants' fourth affirmative defense—fraud

Plaintiff's motion to strike Defendants' affirmative defense of fraud is granted without prejudice. Like the fraud counterclaims, which the Court dismissed without prejudice, Defendants' fraud affirmative defense relies on information and belief.

### 5.    Defendants' fifth affirmative defense—unconscionability

As their fifth affirmative defense, Defendants argue that the terms of the alleged contract are unconscionable and should not be enforced. The Court's analysis above in evaluating the validity of the jury waiver was only for purposes of resolving the jury waiver issue—the unconscionability analysis there does not bear on the analysis of Defendants' affirmative defenses against enforcement of the contract. *IFC*, 512 F.3d at 995 (once the jury waiver issue is resolved it means only that a judge will resolve the other issues in the litigation). A contract may be unenforceable if a court finds terms therein procedurally unconscionable, substantively unconscionable, or a combination thereof. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006). Two indicators of unconscionability are "a significant cost-price disparity" and

"an overall imbalance in the obligations and rights imposed by the bargain" (*Wigginton v. Dell, Inc.*, 890 N.E.2d 541, 548 (Ill. App. Ct. 2008) (citation omitted)), both of which are alleged by Defendants in their affirmative defense of unconscionability. Plaintiff's motion to strike the fifth affirmative defense is denied.

### 6.     Defendants' sixth affirmative defense—breach of contract

Plaintiff's motion to strike Defendants' sixth affirmative defense is granted, although not for the reasons argued by Plaintiff. In Defendants' sixth affirmative defense, Defendants state that if the Court grants Defendants' counterclaim and reforms the contract between the parties, then Plaintiff has—more precisely, will have—breached the reformed agreement. The breach will, in turn, furnish Defendants with an affirmative defense against Plaintiff's breach of contract action. Plaintiff, in keeping with its other arguments in its motion to strike, argues that the Court should strike the affirmative defense because the contract is unambiguous. Defendant filed only a cursory response with respect to this affirmative defense.

As a threshold matter, Defendants' counterclaim does not include a reformation action. But even if one were included, it would not matter. Such a defense would be needlessly duplicative, because if Defendants were successful on a reformation counterclaim, then, by definition, they could not be held to have breached the reformed agreement. Plaintiff's affirmative defense is just a necessary corollary of a successful reformation action. *Cf. Goodwine State Bank v. Mullins*, 625 N.E.2d 1056, 1064 (Ill. App. Ct. 1993); *L.E. Myers Co. v. Harbor Ins. Co.*, 384 N.E.2d 1340, 1344 (Ill. App. Ct. 1978) (reformation relates back to the date of the reformed instrument). Plaintiff's motion to strike Defendant's sixth affirmative defense is granted.

### 7.     Defendants' seventh affirmative defense—credit or offset

The Court grants Plaintiff's motion to strike Defendant's seventh affirmative defense. As courts in this district have observed, an affirmative defense operates to eliminate liability rather than reduce it. See *Lettuce Entertain You Enters., Inc. v. Leila Sophia AR, LLC*, --- F. Supp. 2d ----, 2009 WL 1605917, at *3 (N.D. Ill. June 8, 2009). Because credit, offset, and setoff are not affirmative defenses in the context of this case, they need not be pleaded. *Ace Hardware Corp. v. Marn, Inc.*, 2008 WL 4286975, at *8 (N.D. Ill. Sept. 16, 2008) (discussing *Coplay Cement Co. v. Willis & Paul Group*, 983 F.2d 1435, 1440-41 (7th Cir. 1993)); *Amelio v. Yazoo Mfg. Co.*, 98 F.R.D. 691, 693 & n.3 (N.D. Ill. 1983) (striking the affirmative defense of credit); *Ruggio v. Ditkowsky*, 498 N.E.2d 747, 751 (Ill. App. Ct. 1986) (remarking that "[n]either plaintiff's citations nor [the Illinois Appellate Court's] own research has found authority to support" the contention that "offset" "is an affirmative defense which defendant had the burden to raise and prove"). Because offset and credit are not affirmative defenses that Defendants need to plead in this case, Plaintiff's motion to strike Defendants' seventh affirmative defense is granted.

### 8.     Defendants' eighth (omnibus) affirmative defense

Defendants' eighth affirmative defense is untitled and invokes the contents of Defendants' counterclaim and third-party complaint in their entirety "to the extent that any of these claims and allegations may bar Plaintiff's claims." (Answer at 15.) Defendants' eighth affirmative defense is deficient as a matter of law. The defense is certainly "short and plain," as is required under Rule 8(a), but it does not give Plaintiff fair notice as to the nature of the defense that Defendants are asserting. *See Codest*, 954 F. Supp. at 1228; see also *Glover v. Mary Jane M. Elliott, P.C.*, 2007 WL 2904050, at *6 (W.D. Mich. Oct. 2, 2007) (striking an omnibus

affirmative defense and likening it to an "exercise[] in throat-clearing" that adds "nothing to the answer").

### 9. Defendants' eleventh affirmative defense—"motion to dismiss"

Defendants' eleventh affirmative defense is captioned "motion to dismiss," in which Defendants identify shortcomings in Plaintiff's replevin action which they say should lead to dismissal under Federal Rule of Civil Procedure Rule 12(b)(6). However, because a motion to dismiss under Rule 12(b)(6) is not an affirmative defense, the Court strikes Defendants' eleventh affirmative defense on its own motion.

## V. Conclusion

For the reasons stated above, Plaintiff's motion to strike Defendants' jury demand [37] is granted; Plaintiff's motion to dismiss Defendants' counterclaims [40] is granted in part and denied in part, although the dismissals are without prejudice; and Plaintiff's motion to strike Defendants' affirmative defenses [39] is granted in part and denied in part.


Dated:  August 31, 2009                    _____
                                           Robert M. Dow, Jr.
                                           United States District Judge